Appeal by the defendants, Hearing Systems, Inc., and Montgomery Hearing Health Services, Inc., from a judgment for the plaintiff, Herman B. Chandler, in the latter's action based upon allegations of fraud in the sale of hearing aids.[1] We reverse and remand.
Originally, Chandler sued Hearing Systems, Montgomery Hearing Health Services, and Dahlberg Hearing Services, seeking damages for breach of contract, fraud, and conversion in connection with his purchase of hearing aids. Prior to trial, however, Chandler settled his contract dispute with Dahlberg and proceeded against the present defendants on his conversion and fraud counts. In the ensuing trial, after appropriate motions, only the fraud counts were submitted to the jury; the jury turned a verdict for plaintiff in the amount of $21,780. The defendants' post-trial motions were denied, and they appealed. Chandler does not cross-appeal from the trial court's action removing the conversion count from the jury's consideration, nor does he argue it; hence, the only issue before us concerns the allegations of fraud.
The facts pertaining to that issue are, to a degree, convoluted. Apparently, Chandler, having read an advertisement in Reader's Digest, mailed a postcard containing an inquiry about a hearing aid. Thereafter, he was contacted by Don Abston, a hearing aid consultant employed by Hearing Systems, Inc. (d/b/a Metro Hearing Aid Center in Saraland). Abston took "imprints," or wax impressions, of Chandler's ears, and, thereafter, Chandler and Abston, on behalf of Hearing Systems, Inc., entered into a contract whereby Chandler purchased two hearing aids at a price of $1,780, tendering his bank check in payment. According to Chandler, this contract allowed him a full refund within 30 days if he was dissatisfied.
The representative, Don Abston, deposited Chandler's check in a bank account of Hearing Systems, Inc., and notified the owner of Hearing Systems, Inc., Mrs. Jane Guillot, of the sale. Abston then ordered the hearing aids from Dahlberg Hearing *Page 86 
Systems. Abston received his commission from the sale from Mrs. Guillot.
Abston delivered the hearing aids to Chandler. About ten days later, Chandler telephoned Abston to report his difficulty in turning the volume adjustment screw. Abston called upon Chandler to assist him in that process. He was assisted on this occasion by Max Guillot, husband of Jane Guillot and owner of Montgomery Hearing Health Services, Inc., who was acting as a consultant for Hearing Systems, Inc., at this time. Chandler was still dissatisfied, however, and advised Abston by letter of his desire for a refund. Abston called upon Chandler once more and, as a result of that meeting, Abston took another set of wax impressions in order to provide larger aids for Chandler. When these arrived, Abston went to Chandler's residence, accompanied by Max Guillot, and installed them. The price for this new set of hearing aids was $1,378, or $402 less than for the price of the first set of hearing aids. The parties, on January 17, 1984, entered into a new written contract on that basis. This contract provided for a right to cancel by giving notice within three business days. Chandler, however, maintained that Abston told him that he had 20 days within which to cancel. In any case, on February 10, 1984, Chandler wrote to Abston demanding a full refund of $1,780, and returning the second set of hearing aids. Abston communicated this information to Mrs. Jane Guillot, who informed Abston that she would handle the matter. As she later testified, Chandler was not refunded the $402 coverage resulting from the substitution of the second set of aids because he insisted upon a full refund, when, according to Mrs. Guillot, his complaint occurred after the expiration of his trial period. Additionally, Abston recommended to her a "wait and see" position while they applied the company policy of "keeping the customers happy."
By his amended complaint, Chandler alleged the following:
 "1. During the latter part of 1983, Plaintiff purchased from the Defendants a hearing aid for $1,780.00.
 "2. The hearing aid referred to in paragraph 1 was defective and would not function properly.
 "3. The Defendants on more than one occasion went to the Plaintiff's residence in an effort to remedy the problem.
 "4. The Defendants were unable to properly correct the problem and advised the Plaintiff that another hearing aid would be necessary,
 "5. The Defendants informed Plaintiff that the new hearing aid would cost less than the original hearing aid and that the Plaintiff would be entitled to a refund of a portion of the purchase money which the Plaintiff previously paid to the Defendants.
 "6. On or about January 30, 1984, Defendants sold and delivered to Plaintiff a second hearing aid, the purchase price of which was $1,378.00.
 "7. The Defendants took possession of the original hearing aid which was sold to Plaintiff and represented to Plaintiff that a refund in the amount of $402.00 would be paid to him.
 "8. The Defendants further represented to Plaintiff that this second hearing aid would perform properly and would fit properly in the ear of Plaintiff.
 "9. As a result of the representations made by Defendants, the Plaintiff agreed to accept this second hearing aid.
 "10. This second or substituted hearing aid would not in fact properly fit in the ear of Plaintiff.
 "11. The Defendants again went to the residence of the Plaintiff and attempted to properly fit the hearing aid into the ear of the Plaintiff.
 "12. On or about February 10, 1984, Plaintiff properly revoked acceptance of the hearing aids within the meaning and terms of the Commercial Code of Alabama by returning the hearing aids and demanding a return of the original purchase price of $1,780.00.
 "13. The Defendants have maintained possession and control of both hearing aids and have not returned any of the purchase monies previously paid to Defendants by Plaintiff. *Page 87 
". . .
 "34. The Defendant, Hearing Systems, Inc., has refused to act in accordance with the previous representations to the Plaintiff and has therefore committed a fraud and misrepresentation upon the Plaintiff.
 "35. The willful and reckless misrepresentations committed by the Defendant, Hearing Systems, Inc., constitute acts which are gross, malicious, and oppressive, and were committed with an intent to deceive or defraud the Plaintiff.
 "WHEREFORE, Plaintiff demands judgment against the Defendant, Hearing Systems, Inc., for the sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS, plus interest and costs.
 "36. Plaintiff realleges paragraphs one through thirty-five.
 "37. The Defendant, Montgomery Hearing Health Services, Inc., has refused to act in accordance with the previous representations to the Plaintiff and has therefore committed a fraud and misrepresentation upon the Plaintiff.
 "38. The willful and reckless misrepresentations committed by the Defendant, Montgomery Hearing Health Services, Inc., constitute acts which are gross, malicious, and oppressive, and were committed with an intent to deceive or defraud the Plaintiff.
 "WHEREFORE, Plaintiff demands judgment against the Defendant, Montgomery Hearing Health Services, Inc., for the sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS, plus interest and costs."
Code of 1975, § 6-5-101, defines "fraud":
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
As shown by the allegations of his complaint, plaintiff Chandler charged the defendants with willful and reckless misrepresentations made with intent to deceive. Thus, it was incumbent upon plaintiff to prove the elements of fraud against each: "(1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) acted upon by the opposite party; and (4) reliance by the complaining party which was justifiable under the circumstances." Bowman v. McElrath Poultry, Inc., 468 So.2d 879
(Ala. 1985).
It is also the law that, when the alleged representation relates to some future event, not only falsity, reliance, and damages must be proved, but also it must be proved that "at the time the statement or promise about the future was made, there was an actual fraudulent intent not to perform the act promised and an intent to deceive the plaintiff." Kennedy Electric Co.v. Moore-Handley, Inc., 437 So.2d 76, 80-81 (Ala. 1983).
The gist of the fraud claimed by plaintiff was that he did not get the $402 refund as promised and that his second set of hearing aids "would not perform properly and would not fit properly."
A cogent statement of the plaintiff's burden under these circumstances is found in Purcell Co. v. Spriggs Enterprises,Inc., 431 So.2d 515, 519 (Ala. 1983):
 "The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala. 1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). . . ." *Page 88 
See also P S Business, Inc. v. South Central Bell TelephoneCo., 466 So.2d 928 (Ala. 1985).
Insofar as Abston's conduct and intent are concerned, there is no reasonable inference from the evidence that he knew that no money would be refunded to Chandler, even within the 20-day contractual period for cancellation advocated by Chandler. Additionally, no evidence exists suggesting that Abston knew that the aids would not fit or would not work properly. To the contrary, it is established by the evidence that Abston, and Guillot as well, sought to furnish Chandler with satisfactory hearing aids, making several visits to his residence in order to properly fit the aids, which in fact were properly fitted during these visits. The fitting process may have indeed been difficult and the hearing adjustments may have been cumbersome to Chandler, personally; however, the subsequent dissatisfaction with his contract did not constitute fraud. And, as stated in Purcell, supra:
 "Ordinarily, intent is a matter peculiarly within the province of the trier of facts. Walker v. Woodall, 288 Ala. 510, 262 So.2d 756
(1972). However, the jury has no untrammeled discretion to speculate upon the existence of fraudulent intent. Any finding on the issue must be based on reasonable inferences from the evidence, and intent to defraud must be clearly proved by a preponderance of the evidence. Universal Brokers, Inc. v. Higdon, 56 Ala. App. 184, 320 So.2d 690
(1975); Boulevard Chrysler-Plymouth v. Richardson, 374 So.2d 857 (Ala. 1979) (Torbert, C.J., dissenting). . . ."
Nothing in the evidence establishes a reasonable inference of fraudulent intent on Abston's part.
Regarding Montgomery Hearing Health Services, Inc., what we have stated concerning Abston's conduct as it related to Hearing Systems, Inc., applies equally to the conduct of Guillot. Furthermore, there was no evidence that, during the transaction in question, Guillot was acting in any capacity other than as a consultant for Hearing Systems, Inc.; thus his position vis-a-vis Chandler is to be considered similar to that of Abston. No evidence of any representations by him on behalf of Montgomery Hearing Health Services, Inc., was introduced. That defendant, moreover, received none of the proceeds of the sale to Chandler.
Accordingly, it was error to overrule the defendants' motion for judgment notwithstanding the verdict made on the ground that plaintiff had failed to prove a prima facie case of fraud. For that reason, the judgment must be, and it is, reversed, and the case remanded for an order by the trial court consistent with this opinion. It is so ordered.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES, J., dissents.
[1] The attorney for plaintiff has suggested the death of Mr. Chandler since this appeal was submitted and the opening of an estate in the probate court of Mobile County. He has also petitioned this Court to be allowed to withdraw as attorney. The petition is granted.
The attorney for the estate has petitioned this Court to substitute as plaintiff-appellee Gary Chandler, as executor of the estate of Herman B. Chandler, deceased. The petition is granted. Rule 43, A.R.App.P. Although invited to do so, the attorney for the estate has chosen not to file a supplemental brief.
The attorney for plaintiff, under Rule 10(f), has moved to supplement the record with five exhibits. These exhibits were, in fact, contained in the clerk's record. The motion is granted.