Harold M. Watters filed a multiple-count complaint against Lawrence County and the Lawrence County Commission (hereinafter together referred to as "the County"),[1] alleging, inter alia, breach of contract (count one), fraud in the inducement (count two), and tortious interference with a contractual or business relationship (count seven). The County filed a counterclaim, alleging, inter alia, conversion on the part of Watters. The trial court directed verdicts in favor of the County on Watters's second and seventh counts. The trial court also directed a verdict in favor of Watters on the County's counterclaim. Watters's first count alleging a breach of contract was submitted to a jury, which returned a verdict in favor of Watters in the amount of $42,000. On appeal Watters questions the propriety of the trial court's directed verdicts for the County on his second count (fraud in the inducement) and his seventh count (interference with a contractual or business relationship). The County in its appeal challenges the directed verdict for Watters on its counterclaim and the denial of its motion for a new trial. We affirm.
This action was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." Ala. Code 1975, § 12-21-12; Robichaux v. AFBICDevelopment Co., 551 So.2d 1017 (Ala. 1989); Perry v. HancockFabrics, Inc., 541 So.2d 521 (Ala. 1989). Thus, a directed verdict is proper in actions filed after June 11, 1987, when the claimant has failed to present substantial evidence as to each element of his cause of action. Substantial evidence is "evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven." § 12-21-12.
 88-472
The second issue argued by Watters in his brief will be addressed first: "Did the trial court commit reversible error in *Page 1013 
granting a directed verdict for the [County] as to [Watters's] seventh cause of action for willful, intentional, and malicious interference with the plaintiff's trade, business, and/or profession?"
The seventh count of Watters's complaint reads, in pertinent part, as follows:
 "On or about the 29th day of September, 1986, the defendants [Lawrence County, Lawrence County Commission, and the county commissioners in their individual capacities] terminated the employment of plaintiff, WATTERS, as county engineer for Lawrence County.
 "The cause of action hereinafter stated against the Defendants is for the willful, intentional and malicious interference with the Plaintiff['s] trade, business and/or profession, which act occurred between January 13, 1986 and October 1, 1986.
 ". . . [T]he Defendants, while acting within the line and scope of their employment as agent, servant and/or employee of the Defendant, LAWRENCE COUNTY and the Defendant, LAWRENCE COUNTY COMMISSION, willfully intentionally and maliciously interfered with Plaintiff['s] business, trade, and/or profession as County Engineer for Lawrence County. . . ."
The employment contract whereby Watters was employed as county engineer of Lawrence County was entered into by Watters and the County Commission of Lawrence County, Alabama, acting for and on behalf of the County of Lawrence in the State of Alabama.
Even though the county commissioners were individual defendants in the trial court, Watters dismissed his appeal from the judgment in their favor. Therefore, we need not address whether they, as individuals, could be liable for interference with the contractual or business relations between the County on the one hand and Watters on the other. Clearly, the County was a party to the contract and to the business relationship with which Watters claimed the County interfered. As a matter of law, a party to a contract or to a business relationship cannot be liable for tortious interference with that contract or business relationship. Lolley v. Howell,504 So.2d 253 (Ala. 1987); Hickman v. Winston County HospitalBoard, 508 So.2d 237 (Ala. 1987).
In his brief filed with this Court, Watters also argues that the County interfered with his private business. This was not raised by the pleadings or in any pre-trial order; it is obvious from the trial brief filed by the County that it based its motions for summary judgment and directed verdict as to the seventh count on the proposition that a party to a contract or business relationship cannot be liable for tortious interference with that contract, and it cited Lolley v. Howell, supra, in support of its motions. There is nothing in the record to show that Watters was seeking to recover under his seventh count for anything other than the County's alleged interference with his contract as county engineer.
Watters also presented the following issue for our review: "Did the trial court commit reversible error in granting a directed verdict for the [County] as to [Watters's] second cause of action for fraud in the inducement?"
Watters's second count reads, in pertinent part, as follows:
 "Plaintiff, Watters, was induced to enter into the contract [with the County] by the [County's] representations to Plaintiff, Watters, that he would not be terminated except for justifiable cause as defined by the contract. Furthermore, the contract stated that it contained the entire agreement between the parties and that it could not be enlarged or altered except in writing by all the parties and endorsed on the contract itself.
 "The representations made by the [County] were false and the [County] knew they were false and they were made with intent to deceive and without the intent of [the County] to perform same at the time they were made."
Watters contends that the County, in order to induce him to move to Lawrence County and become county engineer, made certain promises to him concerning the *Page 1014 
freedom that he would have to run the County's road department and that the County never intended to follow through on these promises. Watters argues that he relied on the County's alleged misrepresentations when he decided to leave his former employment to become county engineer for Lawrence County.
It is clear that Watters's fraud claim is predicated upon the County's alleged misrepresentations concerning its intent to perform under the contract. In order to have the fraud claim submitted to the jury, Watters not only had to present evidence of the basic elements of fraudulent misrepresentation, see Ala. Code 1975, § 6-5-101, but he also had to prove that the County intended "at the time of the allegedmisrepresentation[s], not to perform" and that the County "made the representation[s] with a present intent to deceive." Selbyv. Quartrol Corp., 514 So.2d 1294, 1297 (Ala. 1987) (emphasis in Selby); see also Coastal Concrete Co. v. Patterson,503 So.2d 824 (Ala. 1987); and Russellville Production CreditAssociation v. Frost, 484 So.2d 1084 (Ala. 1986).
 " 'The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala. 1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). . . .' "
Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87 (Ala. 1987); see also Russellville Production Credit Association v.Frost, supra.
The County argues that there was no proof that, at the time it entered into the contract with Watters, it did not intend to perform under the contract. The record substantiates that argument. Watters's evidence tended to show only that the County failed to perform under the contract. As previously noted, evidence of a failure to perform a promise, alone, is not evidence of an intent not to perform at the time the promise was made. Therefore, the trial court properly directed a verdict for the County on Watters's second count, alleging fraud in the inducement.
 88-598
The County contends that the trial court erred in directing a verdict for Watters on its counterclaim, in which it alleged that Watters had converted certain property belonging to the County. In Ott v. Fox, 362 So.2d 836, 839 (Ala. 1978), this Court defined "conversion" as follows:
 "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse. The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." (Citations omitted.)
Consequently, to enable the trial court to submit the issue to the jury, the County had to present substantial evidence that Watters wrongfully exercised dominion over property as to which it had a general or special title or as to which it had an immediate right to possession.
The County asserted in its counterclaim that Watters had converted a "substantial amount of lumber" that it owned, valued at approximately $1,000. The evidence shows that Watters did take some lumber belonging to the County, but that he paid the County $50 for it. In its brief, the County states that Watters paid a nominal sum for the lumber, which had failed to sell at a previous public auction, and thereby converted the lumber. However, *Page 1015 
the County presented no evidence as to the value of the lumber. The County also failed to show that Watters acted inappropriately or illegally in not purchasing the lumber at the auction. On the other hand, Ronald Griffith, a county engineer in Lauderdale County who was familiar with the lumber, testified on behalf of Watters that, in his opinion, the lumber was "worthless."
The County also asserted in its counterclaim that Watters had misappropriated office space, office materials and equipment and that he had worked on private business during office hours. The County presented the testimony of Watters's secretary, Ms. Holliman, that Watters occasionally took county equipment "around lunch time" and put it in a private vehicle, returning the equipment "around" one o'clock or sometime thereafter. On cross-examination, Ms. Holliman conceded that she did not know what equipment had been taken or for what purpose it had been taken. Ms. Holliman did testify that Watters received telephone calls during office hours from three persons concerning private business. She further testified that "as far as [she] kn[e]w," Watters did occasionally use his county office during office hours for drawing and typing unrelated to county business. However, the County presented no evidence that such use was unauthorized. Finally, the County asserted that Watters used the County's copy machine "quite a bit" without compensating the County. In response to a question concerning whether she knew how often Watters actually used the copy machine, Ms. Holliman testified, "Not really." Again, the County presented no evidence that Watters's use of the copy machine was unauthorized.
Viewing the evidence in a light most favorable to the County, as we must, we hold that the County failed to prove an essential element of a cause of action for conversion — a wrongful exercise of dominion over the property. Therefore, the trial court did not err in directing a verdict for Watters on the County's counterclaim.
The County filed a motion for a new trial that, in pertinent part, read as follows:
 "1. The Code of Alabama§ 12-16-60 (1975) requires [each member] of the jury to be a 'resident of the county for more than 12 months' prior to serving as a jury member.
 "2. Two members of the jury were residents of Morgan County, Alabama and not Lawrence County, Alabama. Ronald K. Beck resided in Morgan County . . . and James K. Gillespie had been a resident of Morgan County in excess of two years.
 "3. Neither Ronald K. Beck nor James K. Gillespie were qualified to sit as jurors in the case; therefore, the judgment is void."
In denying the motion, the trial court entered an order that, in pertinent part, reads as follows:
 "The foregoing motion contains basically one ground alleging that two members of the petit jury who served on this case were not residents of Lawrence County, Alabama, on the day and date that they were selected to be members of the jury, and by reason of the fact that they were allowed to serve as . . . member[s] of the petit jury, the verdict must be set aside and held for naught and a new trial granted.
 "The Court notes after the hearing held in open Court on the pleadings raised by the Defendant, that on the day and date that this case was tried, two members of that petit jury actually were physically living in Morgan County, Alabama, however, they had recently been citizens of Lawrence County, Alabama for all of their lives and it was noted from the record that one of the jurors, even in answering of the roll call, stated that he was a resident of the City of Decatur, which is in Morgan County, Alabama, and the record is unclear as to whether the other juror made the fact known.
 "However, the Court notes from the Motion . . . that the Defendants have not alleged that they were prejudiced by the fact that these two jurors, who on the day and date of this trial, were residents of Morgan County, and in fact, the evidence *Page 1016 in this cause shows that at least one of these jurors [was] known to the Defendants and that they did not challenge [him] for cause and an argument can be made that they were aware of the fact that the other juror, who is referred to in some of the hearings as Juror Beck, stated that he has only moved to Morgan County out of Lawrence County for a very short period of time. . . .
 "The Court, after consideration of the motion raised herein, is of the opinion that the Defendants have failed to show, in the event that they did not know that at least one of those jurors was not a resident of Lawrence County, that they were prejudiced thereby, and as a result of this finding, the Court is of the opinion that the Motion For . . . New Trial must be denied." (Emphasis added.)
The County contends that its motion was due to be granted because Jurors Gillespie and Beck had not been residents of Lawrence County for the 12 months preceding the trial, as required by Ala. Code 1975, § 12-16-60(a)(1). On the other hand, Watters argues that the County waived its right to challenge the qualifications of these two jurors on the ground of nonresidency.
We note at this point that a ruling on a motion for a new trial rests within the sound discretion of the trial court. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless the record plainly and palpably shows the trial court to be in error. Hill v. Sherwood, 488 So.2d 1357 (Ala. 1986).
Failure to timely challenge a juror for cause may result in a waiver of the right to do so if the fact of disqualification is either known or, through the exercise of due diligence, should be known. Williams v. Dan River Mills, Inc., 286 Ala. 703, 246 So.2d 431 (1971) (waiver resulted upon failure to timely challenge a juror for cause under a provision of Tit. 30, § 55, Code 1940, the predecessor of Ala. Code 1975, §12-16-150). A juror disqualified under § 12-16-60, supra, may be properly challenged for cause. Ex parte Poole, 497 So.2d 537
(Ala. 1986).
The trial court indicated in its order denying the County's motion that the County became aware during the jury qualification process that both of the jurors might be disqualified under § 12-16-60(a)(1). The record reveals that Mr. Gillespie, responding to a question asked by the trial court, stated that he resided in Decatur, Alabama. This Court can take judicial notice that Decatur is not located in Lawrence County. Even though Mr. Gillespie stated that he resided in Decatur, the County never questioned whether he was qualified to serve on the jury. The record also shows that Mr. Beck disclosed the fact of his nonresidency to the trial court in a "private" bench conference, which was transcribed by the court reporter. The record is not clear, however, exactly where in the courtroom the attorneys for the County were at the time this conference occurred, nor is it clear whether those attorneys were in a position to hear what was said in that conference. We think the trial court was in a much better position than we are to know whether the County knew or, through the exercise of due diligence, should have known whether the two jurors were disqualified and, thus, whether it waived its right to challenge them for cause. The record certainly does not plainly and palpably show that the trial court erred in denying the County's motion for a new trial.
88-472 AFFIRMED.
88-598 AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES and KENNEDY, JJ., concur.
[1] Four county commissioners were also sued in their individual capacities. The court directed a verdict in their favor. Watters has dismissed his appeal as to those four defendants. *Page 1017