564 So.2d 412 (1990)
Gerald HANNERS d/b/a Newton Peanut Company
v.
BALFOUR GUTHRIE, INC.
88-1152.
Supreme Court of Alabama.
April 20, 1990.
Steven F. Schmitt, Tallassee, and Joseph W. Adams, Ozark, for appellant.
Herman Cobb of Buntin, Cobb & Shealy, Dothan, and J. Wayne Pierce, Atlanta, Ga., for appellee.
HOUSTON, Justice.
This is an appeal from summary judgment entered in favor of Balfour Guthrie, *413 Inc. ("Balfour"),[1] against Gerald Hanners d/b/a Newton Peanut Company ("Hanners") on Hanners's fraud claim with regard to the payment terms of two contracts entered into between Balfour and Hanners. We reverse and remand.
The issue for our review is whether a genuine issue of fact existed as to whether Hanners reasonably relied on alleged misrepresentations made by Balfour.
Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. The applicable standard of review is the "substantial evidence rule." Ala.Code 1975, § 12-21-12; Greene v. Thompson, 554 So.2d 376 (Ala.1989); Perry v. Hancock Fabrics, Inc., 541 So.2d 521 (Ala.1989); see, also, Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Thus, the trial court was obligated to view all evidentiary material offered by Balfour in support of its motion in the light most favorable to Hanners, Houston v. McClure, 425 So.2d 1114 (Ala.1983); and the burden of proving the non-existence of reasonable reliance on the part of Hanners rested with Balfour as the moving party.
Viewing the evidence in the light most favorable to Hanners, as we are required to do under Rule 56, we find that the trial court had the following facts before it at the time it granted Balfour's motion for summary judgment: Hanners operated a sole proprietorship known as Newton Peanut Company, whose business was to buy peanuts, which Hanners processed by shelling and sizing and then selling to dealers or manufacturers through brokers. Hanners entered into agreements with Balfour on December 12, 1985, and March 5, 1986, to sell Balfour peanuts. Hanners based his decision to sell peanuts to Balfour for the particular quoted prices upon the payment terms stated in both contracts, "Net cash, receipt of invoice," believing these terms to mean that Balfour would pay Hanners when the peanuts were delivered to Balfour. Neither Balfour nor any of its representatives told Hanners that Balfour would pay in any way other than cash upon receipt of Hanners's invoices, which would have been in accordance with the Southeastern Peanut Association rules, as well as the standards and practices generally followed in the peanut industry. Hanners expected to receive payment from Balfour, usually in less than one week and in no more than two weeks after the date on the invoice; otherwise, he would consider the payments untimely and outside the intent of the contract. However, Balfour did not pay Hanners upon receipt of the invoices. Rather, Balfour paid on the first contract approximately 32 days after the date of the invoice for the first shipment and approximately 30 days after the date of the invoice on the second shipment. On the second contract, Balfour made payment to Hanners over 31 days after the date on the invoice. The main effect of Balfour's payments being delayed was Hanners's loss of the use of the funds during that period of time.
It was not until July 1, 1987, that Hanners first learned of the internal procedure of Balfour dealing with the payment of invoices for peanutsto defer payment for 30 days after the date of invoice without regard to the date the invoice was received by Balfour and to pay different people at different times, based upon a determination by one of Balfour's officers. Evidence of this internal procedure was supported by a stamp that Balfour placed on Hanners's invoices that Balfour received, stating, "Do not pay before [date]." This internal procedure for dealing with the payment of invoices for peanuts was in no way related to the provisions of the contract.
Although Hanners was aware of Balfour's past payment history, he was unaware that its procedure was willfully and *414 intentionally carried out contrary to the terms of the contracts.
Realizing that this internal procedure of Balfour was contrary to the express terms of the contracts, Hanners filed suit against Balfour, alleging fraud as a cause of action, predicated upon Balfour's promise to perform some act in the future. Hanners did not bring this fraud action because of the number of days that passed before Balfour made payment, but because of Balfour's internal procedure that caused the delay in payment for 30 days after the date of the invoice, which was in direct conflict with the terms of the contracts. Balfour filed a motion for summary judgment, basing its argument on the claim that Hanners could not have reasonably relied on the alleged misrepresentation of the payment term of the contracts, "Net cash, receipt of invoice." The trial court entered a summary judgment in favor of Balfour, finding no substantial evidence that Hanners justifiably relied on Balfour's alleged misrepresentation. Hanners appealed.
Hanners's fraud claim is predicated upon Balfour's alleged misrepresentations concerning Balfour's intent to perform under its contracts with Hannersto pay "Net cash, receipt of invoice." In order to have such a fraud claim submitted to a jury, Hanners not only had to present evidence of the basic elements of fraudulent misrepresentation, see Ala.Code 1975, § 6-5-101, but also had to prove that Balfour intended "at the time of the alleged misrepresentation, not to perform" and that Balfour "made the representation with a present intent to deceive." Selby v. Quartrol Corp., 514 So.2d 1294, 1297 (Ala.1987); see, also, Watters v. Lawrence County, 551 So.2d 1011 (Ala.1989); Coastal Concrete Co., Inc. v. Patterson, 503 So.2d 824 (Ala. 1987); and Russellville Production Credit Association v. Frost, 484 So.2d 1084 (Ala. 1986).
"`"The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future ... is when the evidence shows that, at the time ... the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala.1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976)...."'"
Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87 (Ala.1987); see, also, Russellville Production Credit Association v. Frost, supra.
Under § 6-5-101, there must be substantial evidence of a misrepresentation of a material fact. If the contracts provided for a specific time for payment for peanuts sold, but Balfour did not intend to abide by that term but rather intended to pay for the peanuts at a time designated by an officer of Balfour after receipt of the invoice but without regard to the terms of the contracts, then there was substantial evidence of a misrepresentation of a material fact made willfully to deceive.
Section 6-5-101 also requires that the misrepresentation be acted on by the opposite party. "[A]cted on" has been judicially interpreted as "reasonably" relied upon, Southern States Ford, Inc. v. Proctor, 541 So.2d 1081 (Ala.1989), and more recently as "justifiably" relied upon, Hickox v. Stover, 551 So.2d 259 (Ala.1989), by the opposite party. See Alfa Mutual Insurance Co. v. Northington, 561 So.2d 1041 (Ala.1990). In his affidavit in opposition to Balfour's motion for summary judgment, Hanners's deposition testimony revealed that he first learned of Balfour's internal procedure for dealing with the payment of invoices for peanuts more than one year after the first contract was executed. Such testimony constituted substantial evidence that Hanners did not know of the *415 misrepresentation at the time Hanners executed the contracts.
In the affidavit of Balfour's corporate credit manager in support of the motion for summary judgment, evidence was presented that the average number of days between the invoice dates and Balfour's check dates (approximately 30 days) was not materially different in the transactions under the two contracts that form the basis of this lawsuit from previous transactions with Hanners. Thus, Balfour contends that, due to Hanners's past dealings with Balfour and others, Hanners should have known that he would not be paid for his peanuts until approximately 30 days after the date of the invoice, regardless of the provision for payment in the contracts. That is not the issue. This is not a suit on a contract, and we are not determining the reasonable expectations of the parties at the time the contracts were executed. Rather, Hanners contends that he was entitled to payment in accordance with the terms of the contract ("Net cash, receipt of invoice"), no matter how that method of payment might be interpreted, not in accordance with the internal procedure by which Balfour paid sellers when an officer of Balfour directed that they be paid. Hanners presented substantial evidence that he acted on Balfour's expected good faith performance of the contract without knowledge that the method of payment provided for in the contracts was irrelevant to Balfour.
The policy of the courts should be to discourage misrepresentation and deceit and to discourage negligence and inattention to one's own interest (see, Southern States Ford, Inc. v. Proctor, supra); and, a cause of action for fraud cannot lie where it is evident that the plaintiff "blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see."[2] In summary, a cause of action for fraud cannot lie where a plaintiff willingly permits a defendant to deceive him. This is not such a case. Rather, the record here clearly reveals that there was substantial evidence of every element of Hanners's cause of action for fraud predicated on a promise to perform some act in the future. Therefore, it was error for the trial court to enter the summary judgment, and the question of fraud should have been resolved by a jury.
REVERSED AND REMANDED.
JONES, ALMON, SHORES and KENNEDY, JJ., concur.
MADDOX and ADAMS, JJ., dissent.
MADDOX, Justice (dissenting).
I think the trial judge correctly concluded that while there was substantial evidence of a breach of contract with resultant damages, there was no substantial evidence of fraud.
ADAMS, Justice (dissenting).
I respectfully dissent. The record in this case reveals 13 previous transactions between Hanners and Balfour and, with regard to each of those deliveries, payment was made anytime between 15 and 46 days after receipt of invoice. In those transactions, the average time elapsed between receipt of invoice and payment was approximately 30 days. The record also reveals that Balfour offered evidence tending to show that Hanners himself did not abide by the two-week time limit which he says he considers "reasonable" under the "net cash, receipt of invoice" terms of the contract. The affidavit of Moultrie Sessions, Jr., of Session's Company, Inc., indicates that Hanners delayed payment on peanuts he purchased from Sessions for 36 days. The same payment terms of "net cash, receipt of invoice" existed with regard to the agreement between Hanners and Sessions. It is clear to me that these things, when considered together, indicate that Hanners did not rely on the payment provisions when contracting with Balfour. Therefore, I dissent.
NOTES
[1] Balfour Guthrie, Inc., was a commodities dealer engaged in shelled peanut transactions, which consisted of purchasing and selling shelled peanuts, primarily for export but with a small percentage (approximately 5%) going into the domestic market.
[2] Munroe v. Pritchett, 16 Ala. 785, 789 (1849).