YATES, Judge.
On June 12, 1992, Mclnnis Corporation and Nichols Concrete Construction, Inc., entered into a subcontract for the placement and finishing of concrete on a state highway bridge. Nichols’s work required concrete finishing on the highway’s riding surface. On June 17, 1992, Willie James Perry, a concrete finisher employed by Nichols, suffered an on-the-job injury. On June 9, 1994, Perry sued Mclnnis, seeking to recover workers’ compensation benefits as a result of that injury. Perry alleged that a Mclnnis employee was operating the crane involved in his injury and that Mclnnis personnel had negligently caused the hook of the sling attached to the crane to hit Perry on the head.
On January 10, 1995, Mclnnis filed a third-party complaint, alleging that Perry was working as an employee of Nichols when he was injured.[1] Mclnnis further alleged that Nichols had breached its subcontract by failing to take over the defense of Mclnnis, and to indemnify Mclnnis, with respect to the workers’ compensation action.
On February 21, 1996, Nichols moved to dismiss the third-party complaint; the court denied the motion. On August 27, 1996, Nichols again moved to dismiss the complaint; the court again denied the motion. On January 29, 1997, Nichols requested the court to reconsider its denial of the motion to dismiss. Nichols argued that the holding in Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633 (Aa.1993), was inapplicable and that Mclnnis was prevented from asserting a claim against it “in circumvention of the exclusivity provision of the Aabama Workers’ Compensation Act.” The court did not rule on the motion.
On June 6, 1997, Nichols moved for a summary judgment, arguing that Mclnnis did not have a valid claim for indemnity and that employer immunity prevents any recovery through indemnity. Following a hearing, the court entered a summary judgment in favor of Nichols, finding “no genuine issue as to any material fact and that the third-party defendant, Nichols Concrete Construction, is entitled to a judgment as a matter of law.” The judgment was made final pursuant to Rule 54(b), Aa. R. Civ. P. Mclnnis appeals.[2] This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Aa.Code 1975.
*420 In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
Mclnnis contends that the trial court erred in entering the summary judgment because, it says, the indemnity agreement between Mclnnis and Nichols is enforceable.
In Goodyear, the supreme court expressly overruled Paul Krebs & Associates v. Matthews & Fritts Construction Co., 356 So.2d 638 (Ala.1978), which had prohibited any civil action against an employer arising out of an employee’s on-the-job injury covered by the Workers’ Compensation Act. Goodyear, 629 So.2d at 638. The supreme court, in interpreting § 25-5-53, Ala.Code 1975, held that the enforcement of an express indemnity agreement against an employer by a third party does not violate the exclusive-remedy provision of Alabama’s Workers’ Compensation Act. The court further stated that it was “mindful of the strong public policy interest favoring enforcement of contractual agreements entered into voluntarily by competent parties, unless they clearly contravene some positive law or rule of public morals.” Id., at 638.
The agreement signed by Nichols states that Nichols would indemnify Mclnnis should Mclnnis be sued because of a negligent act by Nichols, the subcontractor:
“(f) [Nichols] shall indemnify and hold harmless [Mclnnis], its employees, officers, directors, stockholders, subsidiaries and affiliates, from and against all claims, damages, loss, and expenses, including but not limited to attorneys fees, arising out of or occasioned by [Nichols], or anyone for whose acts [Nichols] is or may be liable, provided that such claim, damage, loss or expense is attributable to bodily injury, personal injury, sickness, disease, death, or property damage (other than to [Nichols’s] work itself) including loss of use or consequential damage therefrom, to the extent caused or alleged to be caused in whole or in any part by any act, omission, or breach of duty by [Nichols] or those for whose acts [Nichols] might be liable.”
To trigger Nichols’s duty to indemnify, Mclnnis must show that Nichols or its employees are liable for the injury Perry sustained on June 17, 1992. We note that Perry alleged that his on-the-job injury was caused as a proximate consequence of “negligent, willful and/or wanton conduct, breach of contract, breach of warranty, and/or other wrongful conduct” on the part of Mclnnis. Perry testified that at the time of the accident, all of the Nichols employees were on top of the bridge. He further stated that he was not sure who was controlling the bucket, but that Mcln-nis usually got somebody that works for its company to fill the buckets. There is no indication that there were any negligent acts “arising out of or occasioned by Nichols, or anyone for whose acts Nichols is or may be liable,” that proximately caused Perry’s injury. Therefore, the judgment entered in favor of Nichols as to this claim is affirmed.
*421 Mclnnis next contends that the court erred in entering the summary judgment on its claim that Nichols breached the contract by failing to procure insurance. Mclnnis argues that Nichols failed to provide insurance that otherwise would have provided a defense and indemnity for Mclnnis in Perry’s workers’ compensation action.
Agreements to procure insurance are generally enforceable under Alabama law, and a party who breaches such an agreement is liable for damages resulting from the failure to obtain the promised insurance. Goodyear, supra, at 639. However, a contractual obligation to indemnify is distinct from a contractual obligation to procure insurance. Id. Under an agreement to indemnify, the promisor assumes all liability for all injuries and damage upon the occurrence of a contingency. Id. In contract, an agreement to obtain insurance involves an agreement of a promisor such as Nichols to obtain or purchase insurance coverage, regardless of whether a contingency occurs. Id.
The insurance provision of the Melnnis-Nichols subcontract provides:
“(g) [Nichols] shall carry all insurance required by law of the place where said work is to be performed and in addition shall obtain in full force comprehensive general liability insurance and automobile liability insurance naming [Mclnnis] as an additional named insured with limits of liability satisfactory to [Mclnnis] at the time of entry of this contract. In addition [Nichols] shall procure and maintain in full force and effect workman’s compensation insurance and employer’s liability insurance. [Nichols] shall furnish [Mclnnis] with satisfactory evidence that such insurance has been obtained and paid for and will continue in force until the completion of the work, and if [Nichols] should sublet any of this work to a third party, [Nichols] shall see that the insurance requirements set herein shall be satisfied by said third party.”
In Reliance Ins. Co. v. Gary C. Wyatt, Inc., 540 So.2d 688, 690 (Ala.1988), the supreme court, in construing a similar breach based on failure to procure insurance, noted that the employee’s injury may go to the issue of damage sustained by the breach of contract to procure insurance, but that is not relevant to a determination of whether the employer breached the contract. Similarly, Nichols’s obligation to procure insurance is separate from and independent of any obligation to indemnify. The record indicates that the contract was breached. Nichols’s insurance carrier reported that Nichols did not procure insurance for Mclnnis and did not request that Mclnnis be added to its policy as a named insured, or in any capacity. We conclude that Mclnnis is entitled to proceed on its claim alleging a breach of contract to procure insurance. Reliance Ins. Co., supra; see also Goodyear, supra, at 639. Accordingly, the summary judgment entered in favor of Nichols is reversed as to this claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ„ concur.
THOMPSON, J., concurs in the result.

. Nichols filed a bankruptcy petition in 1993. On October 14, 1994, Mclnnis was granted relief from the automatic stay in bankruptcy to pursue its claim for indemnity against Nichols, but only to the extent that Nichols “was insured through valid and collectable insurance providing a defense and indemnity to Mclnnis.” The trial court granted Mcln-nis’s motion to bring in Nichols as a third-party defendant.

. Perry settled his workers’ compensation claims against Mclnnis and is not a party to this appeal.