YATES, Presiding Judge.
Triple D Trucking, Inc. (“Triple D”), appeals from a summary judgment in favor of American Petroleum Equipment and Construction, Inc. (“APEC”), on Triple D’s claim alleging work and labor performed.
We initially note that in reviewing the disposition of a motion for a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evi *1235 dence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Banners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
This dispute arises out of the construction of a Winn-Dixie Marketplace supermarket in Pinson, Alabama. Pinson Marketplace, L.L.C. (“Pinson Marketplace”), the owner of the land on which the supermarket was to be built, entered into a contract on November 1, 1999, with Charles & Vinzant Construction Company (“Charles & Vinzant”) to construct the supermarket. Charles & Vinzant, as the general contractor, entered into a subcontract with APEC to perform certain site work for the project. APEC further subcontracted a portion of its work, including hauling dirt, to Specialty Demolition & Salvage, Inc. (“Specialty”). Specialty, in turn, subcontracted with Triple D to complete the dirt hauling for the project.
Triple D apparently ran into difficulties in being compensated for its work done on the project. On June 9, 2000, Triple D filed a mechanic’s lien against the property upon which the supermarket was being constructed; the lien included both the buildings and improvements upon the land. The lien claimed to secure an indebtedness of $44,858.97. On October 23, 2000, Charles & Vinzant moved the Probate Court of Jefferson County to transfer the lien filed by Triple D to a bond pursuant to § 35-11-233, Ala.Code 1975. The probate court granted that motion on the same day.
Triple D, on November 30, 2000, sued Specialty, APEC, Charles & Vinzant, Pin-son Marketplace, and Compass Bank, seeking to recover for work and labor performed and equipment furnished. The complaint also sought to enforce the lien filed by Triple D. Triple D alleged the following in its complaint:
“1. On ... March 13, 2000, [Triple D] and [Specialty] entered into an agreement for work and labor done and equipment furnished in furtherance of improvement of the described property and the construction of a building thereon, located at 4705 Centerpoint Road, Pinson, Alabama 35126, designated the Winn-Dixie Marketplace Project.
“2. [Triple D] agreed to provide the work and labor done and to furnish the equipment for the agreed sum of $45 per hour, and the cost of furnished materials to said construction project.
“3. [Triple D] provided the work and labor and equipment for [Specialty], until [June 1, 2000]. [APEC] on or about [June 1, 2000] discharged [Specialty], and concurrently therewith engaged the services of [Triple D], at which time [APEC] induced [Triple D] to continue to perform work upon the project and stated to [Triple D] that if it would continue to haul its bills for services would be paid. [Triple D] continued to haul and subsequently] tendered its billing invoices to [APEC].
“4. [Triple D] completed performance as agreed, work and labor was done and equipment and materials were furnished until [June 29, 2000, when APEC] stopped calling [Triple D] to schedule trucks to come to the Pinson job site to engage in hauling, and at that time the amount invoiced to the Defendants, was the sum of $90,407.85. Over the course of the accumulation of the *1236 said sum the Defendants paid a total of $49,108.95.”
On March 4, 2002, Charles & Vinzant and Pinson Marketplace moved for a summary judgment, .arguing, among other things, that Triple D had failed to provide the notice required by § 35-11-218, Ala. Code 1975, before seeking to enforce its mechanic’s lien. On May 13, 2002, the trial court entered a summary judgment in favor of Charles & Vinzant and Pinson Marketplace, finding that Triple D had failed to provide the required notice of intent to file a mechanic’s lien as required by § 35-11-218, Ala.Code 1975. The trial court made this order final pursuant to Rule 54(b), Ala. R. Civ. P.[1]
APEC moved for a summary judgment on March 5, 2002; APEC amended its motion on March 26, 2002, to argue that Triple D was a general contractor as defined by § 34-8-1, Ala.Code 1975; that Triple D was not licensed as a general contractor; and that contracts entered into by unlicensed general contractors are void. In support of its motion, APEC presented the affidavit of the executive secretary of the State Licensing Board for General Contractors, which indicated that Triple D was not licensed as a general contractor.
Triple D responded to APEC’s amended motion on May 6, 2002, arguing that it is a motor-vehicle contract carrier licensed and regulated by the Alabama Public Service Commission (“the Commission”) pursuant to § 37-3-1 et seq., Ala.Code 1975, and as such is not required to be licensed as a general contractor pursuant to § 34-8-1, Ala.Code 1975. Following a hearing on APEC’s motion for a summary judgment, the trial court, on May 13, 2002, entered the following order, which reads, in part:
“3. [Triple D] presented the Court on this day with an argument that [it] is a common carrier by motor vehicle and/or a contract carrier by motor vehicle that is properly licensed by the Alabama Public Service Commission and, therefore, is not required to be licensed as a general contractor under [§ 34-8-1 et seq., Ala.Code 1975. Triple D] has not presented the Court with any evidence that [it] is so licensed by the Alabama Public Service Commission as a common carrier by motor vehicle and/or contract carrier by motor vehicle.
“[Triple D] is hereby allowed ten (10) days from today’s date within which to submit to the Court proper evidentiary materials to establish that [it] is properly licensed by the Alabama Public Service Commission as a common carrier by motor vehicle and/or contract carrier by motor vehicle. No further evidentiary materials will be accepted by the Court after this ten (10) day period.”
On May 22, 2002, Triple D filed a brief in opposition to APEC’s motion for a summary judgment; a copy of a decision by the Commission indicating that Triple D was issued a motor carrier certificate; the affidavit of Triple D’s president Dan Youngblood; and a letter from APEC to Specialty. On May 31, 2002, APEC moved to strike the filing by Triple D of the Commission’s decision, contending that it was neither an original nor a certified copy and, therefore, was due to be stricken. APEC also moved to strike portions of Youngblood’s affidavit, contending they were hearsay, legal conclusions, inadmissi *1237 ble opinions or conclusions, and that they lacked the proper foundation or predicate. On June 4, 2002, APEC submitted its brief in support of its motion for a summary judgment.
On June 12, 2002, the trial court entered an order striking the decision of the Commission submitted by Triple D and entered a summary judgment in favor of APEC.[2] Triple D appeals, following the denial of its postjudgment motion.
APEC argues on appeal, as it did in support of its motion for a summary judgment, that Triple D was performing “site work” and “grading” on the supermarket project and, therefore, was a general contractor as defined by § 34-8-1, Ala.Code 1975. APEC contends that Triple D was not licensed as a general contractor and that contracts entered into by unlicensed general contractors are void and, therefore, Triple D cannot recover on its claim alleging work and labor performed.
Section 34-8-1, Ala.Code 1975, provides, in relevant part:
“(a) For the purpose of this chapter, a ‘general contractor’ is defined to be one who, for a fixed price, commission, fee, or wage undertakes to construct or superintend or engage in the construction, alteration, maintenance, repair, rehabilitation, remediation, reclamation, or demolition of any building, highway, sewer, structure, site work, grading, paving or project or any improvement in the State of Alabama where the cost of the undertaking is fifty thousand dollars ($50,000) or more, shall be deemed and held to have engaged in the business of general contracting in the State of Alabama.
[[Image here]]
“(c) For the purpose of this chapter a ‘subcontractor’ is defined to be a ‘general contractor’ as defined in subsection (a), who performs work under contract to another general contractor.”
“It is well settled that ‘[ejxpress or implied contracts entered into by an unlicensed general contractor are null and void because they violate public policy.’ ” White v. Miller, 718 So.2d 88, 89 (Ala.Civ.App.1998), quoting Goodwin v. Morris, 428 So.2d 78, 79 (Ala.Civ.App.1983). To be entitled to a summary judgment on a non-licensure defense with respect to an alleged general contractor, a party must prove “(1) that the alleged contractor was unlicensed; (2) that the contracted work was of the type covered by the licensure statute; and (3) that the ‘cost’ of the work was [$50,000][3] or more.” Central Alabama Home Health Servs., Inc. v. Eubank, 790 So.2d 258, 260 (Ala.Civ.App.2000).
In Eubank, Eubank had entered into an agreement with Central Alabama Home Health Services (“CAHHS”) and its president George E. Hutchinson to provide services as a “property manager.” Eubank’s work was centered around two planned construction projects. According to Eu-bank, CAHHS needed someone to meet with CAHHS personnel, bankers, architects, engineers, and real estate professionals to coordinate the construction projects. Id.
Eubank sued CAHHS and Hutchinson, alleging breach of contract and account *1238 stated based upon the work performed by Eubank and seeking $12,393.95. A jury trial was held in which CAHHS moved for a judgment as a matter of law, arguing that Eubank was not entitled to recover because he had failed to obtain required state occupational licenses. CAHHS argued that the work performed by Eubank was that of a general contractor[4] and that because Eubank lacked a state license to perform general contracting work his claim must fail as a matter of law. The trial court denied CAHHS’s motion and submitted the case to the jury. The jury returned a verdict in favor of Eubank and CAHHS appealed following the denial of its postverdict judgment as a matter of law. Id.
Construing the language of § 34-8-l(a), Ala.Code 1975, this court concluded that the services provided by Eubank were not, as a matter of law, those of a general contractor. In reaching that conclusion, this court noted the testimony of Eubank describing his “go-between” role and the testimony of both Eubank and Hutchinson that Eubank was not hired as a general contractor. Id.
It is undisputed that Triple D was not licensed as a general contractor and that the amount invoiced by Triple D for its work on the project was $90,407.85, which exceeds the statutory minimum of $50,000; the dispositive issue is whether the contracted work was of the type covered by the licensure statute. See Eubank, supra. APEC pointed to Triple D’s complaint in which Triple D alleged that it had entered into a contract to provide work and labor and equipment in furtherance of an improvement to the real property upon which the supermarket was to be constructed. APEC also relied upon the verified statement of hen filed by Triple D and signed by Youngblood in which he stated that the lien was claimed for “labor and vehicles furnished in the completion of the hauling of chert used as a fill medium at the project site.” Further, APEC relied upon the following excerpts from Youngblood’s affidavit:
“Triple D moved dirt on this project to make the foundation for all other construction that was done on the seventeen acres that a lien was filed against.... We transported the loads to the land and filled in the original foundation of the buildings and parking.... Inspections were carried out while we were placing the dirt.”
Triple D argues that its invoices, which were submitted by APEC in support of its original motion for a summary judgment, indicate that it was charging for strictly hauling dirt and not for spreading or compacting the dirt, or for other actual site work. Youngblood specifically testified that “[Triple D] provided a service as a sub-contractor to move dirt on the job.”
We conclude that the record in this case indicates that Triple D was engaged only in the hauling and dumping of dirt for the project. APEC has failed to present evidence indicating that Triple D was engaged in “site work” or “grading.” Accordingly, the summary judgment in favor of APEC is reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON and MURDOCK, JJ., concur in the result.

. Charles & Vinzant and Pinson Marketplace were not made parties to this appeal. Additionally, counsel for Specialty informed the trial court and parties that Specialty was no longer in business and that all of its equipment had been repossessed. Although they were named as defendants by Triple D, Triple D did not prosecute claims against Specialty and Compass Bank. Neither Specialty nor Compass Bank are parties to this appeal.

. It does not appear that the court struck any portion of Youngblood's affidavit.

. Section 34-8-l(a), Ala.Code 1975, was amended effective January 1, 1998, to increase the amount in question from $20,000 to $50,000. Neither party contended in Eu-bank that the amendment applied to that case, therefore, the court applied the pre-amendment amount of $20,000. See Eubank, at 260 fn. 3.

. CAHHS also argued that Eubank performed the work of an "architect.” Because we are only concerned with the defense of nonlicen-sure as it relates to general contractors in the present case, we omit the discussion in Eubank relating to § 34-2-30(2), Ala.Code 1975, and architects.