629 So.2d 633 (1993)
The GOODYEAR TIRE AND RUBBER COMPANY
v.
J.M. TULL METALS COMPANY.
1920610.
Supreme Court of Alabama.
September 17, 1993.
Rehearing Denied November 5, 1993.
*634 John D. Watson and Denise A. Dodson of Bradley, Arant, Rose & White, Birmingham, for appellant.
George M. Van Tassel, Jr. and Mac B. Greaves of Sadler, Sullivan, Herring & Sharp, P.C., Birmingham, for appellee.
HORNSBY, Chief Justice.
The Goodyear Tire and Rubber Company ("Goodyear") appeals from a dismissal of an action of indemnity; the trial court held the action was barred by the exclusive remedy provision of the Alabama Workers' Compensation Act, § 25-5-53, Ala.Code 1975, and dismissed it pursuant to Rule 12(b)(6), Ala. R.Civ.P.
In reviewing a Rule 12(b)(6) dismissal, this Court must examine the allegations in the pleadings and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff, to determine whether the plaintiff can prove "any set of facts in support of his claim which would entitle him to relief." Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981). "[T]his Court does not consider whether the plaintiff will ultimately prevail, [but] only whether he has stated a claim under which he may possibly prevail." Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985) (emphasis original).
Goodyear sued Tull Metals ("Tull"), seeking indemnity for the amounts paid to David Cook, an employee of Tull, for injuries suffered during the course of his employment with Tull, due to the negligence of Goodyear; Goodyear also claimed that Tull had breached an agreement to procure public liability insurance naming Goodyear as an additional insured.[1] Goodyear amended its complaint to add a claim that § 25-5-53, Ala.Code 1975, unconstitutionally impaired Goodyear's contract.
The complaint recites the following facts: For consideration, Tull agreed to deliver to Goodyear different types of metals to Goodyear's plant in Gadsden. On October 22, 1990, David Cook, an employee of Tull, was injured on the Gadsden premises while delivering materials pursuant to the agreement between Goodyear and Tull. Cook sued Goodyear, and Goodyear brought this action seeking a judgment declaring that Tull was required to indemnify Goodyear and seeking damages for breach of contract resulting from Tull's failure to provide public liability insurance.
The written purchase order contained the following provision requiring Tull ("Seller") to indemnify Goodyear ("Purchaser"):
"(13) To the extent that this Purchase Order calls for work to be performed upon property owned or controlled by Purchaser, it is agreed that:
"....
"(d) Seller will indemnify, save harmless and defend Purchaser from all liability for loss, damage or injury to person or property in any manner arising out of or incident to the performance of this Purchase Order.
"....
"(f) To the extent that this Purchase Order provides that Seller will indemnify, save harmless and defend Purchaser from liability, claims, demands or suits, *635 it is the intention of Seller that such indemnity shall apply, to the extent permitted by law, whether or not the liability, claims, demands or suits arise out of the negligence of Purchaser...."
The purchase order also required Tull to provide public liability insurance to cover any indemnity obligation. The purchase order stated:
"Seller shall carry public liability insurance with limits that are at least the equivalent of a combined bodily injury and property damage single limit of $1,500,000 per occurrence, including contractual coverage with respect to the indemnity provisions of the terms and conditions of this Purchase Order, and shall have purchaser named as an additional insured thereon. Such insurance shall be deemed to be the primary liability coverage for all purposes hereof and Seller shall furnish Purchaser acceptable evidence of such insurance before commencing work hereunder."

I. The Contract to Indemnify

The first issue on appeal is whether § 25-5-53, the exclusive remedy provision of the Alabama Workers' Compensation Act, bars Goodyear's claim based upon the express indemnity agreement with Tull. The trial court, addressing this issue in its order granting Tull's motion to dismiss, stated:
"It is clear in Alabama that this provision [§ 25-5-53] not only bars suits by injured employees against their employers, but also bars suits by third parties seeking to enforce indemnity agreements that purport to insulate the third party from liability for the employee's injury. Paul Krebs & Associates v. Matthews & Fritts Construction Co., 356 So.2d 638 (Ala.1978); Union Camp Corp. v. McAbee Construction Co., 465 So.2d 390, 391 (Ala.1985)."
This Court, in Paul Krebs & Associates v. Matthews & Fritts Construction Co., 356 So.2d 638, 639 (Ala.1978), held:
"The [exclusive remedy provision, § 25-5-53, Ala.Code 1975,] says that no employer shall be held civilly liable for injuries to workmen injured in the course of [their] employment. To allow a third-party tort-feasor to recover over against an employer for injury to an employee would be to allow indirectly what is prohibited directly."
Also, this Court held that to allow a third party to bring an action seeking indemnity from an employer for damages paid to its employee would "write[] into the legislation an exception which is not there." Id. at 640. Since Krebs, this Court has consistently interpreted § 25-5-53 to prohibit any civil action against an employer arising out of an employee's on-the-job injury that is covered by the Workers' Compensation Act. See Redwing Carriers, Inc. v. Crown Central Petroleum Corp., 356 So.2d 1203, 1204 (Ala. 1978); Hertz Equipment Rental Corp. v. Dravo Corp., 360 So.2d 325, 326 (Ala.1978); Stauffer Chemical Co. v. McIntyre Electric Service, Inc., 401 So.2d 745, 746 (Ala.1981); Union Camp Corp. v. McAbee Construction Co., 465 So.2d 390, 391-92 (Ala.1985); see also Aetna Casualty & Surety Co. v. Cooper Stevedoring Co., 504 So.2d 215, 217 n. 4 (Ala.1986), cert. denied, 483 U.S. 1022, 107 S.Ct. 3268, 97 L.Ed.2d 767 (1987).
Goodyear, asking this Court to overrule Krebs and to reverse that line of cases following Krebs, correctly notes that Alabama is the only state that has judicially interpreted its exclusive remedy provision to bar enforcement of express indemnity contracts against an employer. See 2B Arthur Larson, The Law of Workmen's Compensation § 76.43 (1989). Every other jurisdiction that has considered this issue has judicially interpreted its workers' compensation statute to permit enforcement of express indemnity contracts against employers by third parties. See Porello v. United States, 153 F.2d 605 (2d Cir.1946), aff'd in part and rev'd in part and remanded sub nom., American Stevedores, Inc. v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); Goodwin v. George Fischer Foundry Systems, Inc., 769 F.2d 708 (11th Cir.1985) (noting that Alabama is the only jurisdiction to hold that express indemnity agreements are unenforceable against an employer); Tran v. Manitowoc Eng'g Co., 767 F.2d 223 (5th Cir. 1985); Lorenzen v. South Central Bell Telephone Co., 546 F.Supp. 694 (S.D.Miss.1982), aff'd, 701 F.2d 408 (5th Cir.1983); Troxler v. Owens-Illinois, Inc., 717 F.2d 530 (11th Cir. *636 1983) (applying Georgia law); Burdue v. United States Steel Corp., 676 F.2d 1129 (6th Cir.1982); Dunlin v. Circle F Industries, Inc., 558 F.2d 456 (8th Cir.1977) (applying Arkansas law); Titan Steel Corp. v. Walton, 365 F.2d 542 (10th Cir.1966) (applying Utah law); Western Contracting Corp. v. Power Eng'r Co., 369 F.2d 933 (4th Cir.1966) (applying Virginia law); Halstead v. Norfolk & W. R.R., 236 F.Supp. 182 (S.D.W.Va.1964), aff'd, 350 F.2d 917 (4th Cir.1965) (applying West Virginia law); Northern Natural Gas Co. v. Roth Packing Co., 323 F.2d 922 (8th Cir. 1963) (applying Nebraska law); Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co., 721 F.Supp. 740 (E.D.Pa.1989); Keil v. United States, 705 F.Supp. 346 (E.D.Mich.1988); Bieger v. Consolidation Coal Co., 650 F.Supp. 1294 (W.D.Va.1987); Gatley v. United Parcel Service, Inc., 662 F.Supp. 200 (D.Me.1987); Casey v. United States, 635 F.Supp. 221 (D.Mass.1986); Borroel v. Lakeshore, Inc., 618 F.Supp. 354 (D.Colo.1985); Nieves v. Douglas Steamship, Ltd., 451 F.Supp. 407 (S.D.N.Y.1978); Crutchfield v. Atlas Offshore Boat Service, Inc., 403 F.Supp. 920 (E.D.La.1975); New England Telephone & Telegraph Co. v. Central Vermont Public Service Corp., 391 F.Supp. 420 (D.Vt.1975); Whitmarsh v. Durastone Co., 122 F.Supp. 806 (D.R.I.1954) (applying Rhode Island law); Manson-Osberg Co. v. State, 552 P.2d 654 (Alaska 1976); C & L Rural Elec. Co-op. Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337 (1953); City of Clearwater v. L.M. Duncan & Sons, 466 So.2d 1116 (Fla.Dist.Ct.App.), aff'd, 478 So.2d 816 (Fla.1985); General Tel. Co. of the Southeast v. Trimm, 252 Ga. 95, 311 S.E.2d 460 (1984); Kamali v. Hawaiian Elec. Co., 54 Haw. 153, 504 P.2d 861 (1972); Liberty Mutual Ins. Co. v. Adams, 91 Idaho 151, 417 P.2d 417 (1966); Bagwell v. Smith Louisiana Elev. Co-op. Ass'n, 228 So.2d 555 (La.App.1969); American Radiator & Standard Sanitary Corp. v. Mark Eng'g Co., 230 Md. 584, 187 A.2d 864 (1963); Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524, 373 N.E.2d 957 (1978); Giguere v. Detroit Edison Co., 114 Mich.App. 452, 319 N.W.2d 334 (1982); Keefer v. Al Johnson Construction Co., 292 Minn. 91, 193 N.W.2d 305 (1971); Martin v. Fulton Iron Works Co., 640 S.W.2d 491 (Mo.App.1982); De Shaw v. Johnson, 155 Mont. 355, 472 P.2d 298 (1970); Union Pac. R.R. v. Kaiser Agricultural Chem. Co., 229 Neb. 160, 425 N.W.2d 872 (1988); American Fed. Savings Bank v. County of Washoe, 106 Nev. 869, 802 P.2d 1270 (1990); Ramos v. Browning Ferris Indus. of South Jersey, Inc., 103 N.J. 177, 510 A.2d 1152 (1986); City of Artesia v. Carter, 94 N.M. 311, 610 P.2d 198 (N.M.App.), cert. denied, 94 N.M. 628, 614 P.2d 545 (N.M.1980); Mirsky v. Seaich Realty Co., 256 A.D. 658, 11 N.Y.S.2d 191 (1939); General Accident Fire & Life Assur. Corp. v. Union News Co., 23 Misc.2d 956, 200 N.Y.S.2d 880 (1960); Barsness v. General Diesel & Equip. Co., 422 N.W.2d 819 (N.D. 1988); Kendall v. United States Dismantling Co., 20 Ohio St.3d 61, 485 N.E.2d 1047 (1985); Rucker Co. v. M & P Drilling Co., 653 P.2d 1239 (Okla.1982); Rankin v. Sherwin Williams Co., 337 Pa.Super. 78, 486 A.2d 489 (1984); Enserch Corp. v. Parker, 794 S.W.2d 2 (Tex.1990); Freund v. Utah Power & Light Co., 793 P.2d 362 (Utah 1990); Redford v. City of Seattle, 94 Wash.2d 198, 615 P.2d 1285 (1980); Young v. Anaconda American Brass Co., 43 Wis.2d 36, 168 N.W.2d 112 (1969); Cities Serv. Co. v. Northern Prod. Co., 705 P.2d 321 (Wyo.1985); 2B A. Larson, Larson's Workmen's Compensation Law, § 76.42 at pp. 14-734 to -745.
The rationale for the majority rule has been stated as follows:
"Enforcing express contracts of indemnity is no more than enforcing the loss distribution agreed to by the contracting parties. Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va.L.Rev. 959 at 976 (1956). This arrangement to distribute the loss does not offend any policy concerned with securing the payment of workmen's compensation; the compensation payable is not affected by the indemnity agreement. This arrangement does not depart from the policy of limiting the employer's liability; that policy remains intact. All that is involved is the employer's departure from the policy. If the employer desires to voluntarily relinquish his statutory protection, he may do so. Such a relinquishment is not prohibited by [the exclusive provision of New *637 Mexico's Workmen's Compensation Act]; such a relinquishment is consistent with the policy favoring the right to contract."
City of Artesia v. Carter, 94 N.M. 311, 314, 610 P.2d 198, 201 (N.M.App.), cert. denied, 94 N.M. 628, 614 P.2d 545 (N.M.1980).
Our judicial interpretation of § 25-5-53 has been criticized as an "aberration" from this majority rule. See Larson, supra. Indeed, when this Court was initially faced with this issue, it, too, held that enforcement of an express indemnity agreement against an employer by a third party did not violate the exclusive remedy provision of Alabama's Workers' Compensation Act. Eley v. Brunner-Lay Southern Corp., 289 Ala. 120, 266 So.2d 276 (1972). In Eley, the Court noted that our Workers' Compensation Act is based on the Minnesota act and that "the Minnesota construction of [the Minnesota act] is of persuasive value to this court," 289 Ala. at 125, 266 So.2d at 281; then it noted that the Minnesota Supreme Court had said of the Minnesota act: "the act was not intended to affect the rights of other parties not standing in the relationship of employer and employee except to the limited extent expressed in the act itself." 289 Ala. at 125, 266 So.2d at 281, quoting Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355 (1954). The Eley Court further wrote:
"In seeking a declaration that [the third party] is entitled to indemnity from [the employer], [the third party] is not seeking to recover the damages sustained by [the employee], but it is asserting its contractual right ... to be protected by [the employer] from any loss which [the third party] may suffer as a result of [the employee's] injury and his suit against it for damages."
289 Ala. at 126, 266 So.2d at 282. The Court in Eley held that the employer's agreement to indemnify the third party was contractual in nature and independent of the compensation act; therefore, the Court held that the agreement was enforceable.
In Gunter v. United States Fidelity & Guaranty Co., 340 So.2d 749 (Ala.1976), this Court implicitly overruled the holding in Eley, refusing to enforce an indemnity contract between an employer and a third party. The Court did not address the nature of the indemnity claim and, without mentioning Eley, relied on Sherman Concrete Pipe Machinery, Inc. v. Gadsden Concrete & Metal Pipe Co., 335 So.2d 125 (Ala.1976), which involved an implied, rather than an express, contractual agreement to reach its conclusion.
Later, this Court explicitly overruled Eley and broadly interpreted the exclusivity provision of the Workers' Compensation Act to bar claims by third parties against employers for indemnity. Krebs, supra. As authority for its holding, the Court in Krebs relied on a lower appellate court case from New Mexico. Id., 356 So.2d at 640 (citing Gulf Oil Corp. v. Rota-Cone Field Operating Co., 84 N.M. 483, 505 P.2d 78 (1972)). When the Court in Krebs adopted its rationale, at least two other state supreme courts had expressly repudiated the New Mexico decision. See Manson-Osberg Co. v. State, 552 P.2d 654 (Alaska 1976); Gordon B. Hall, Inc. v. Oregon Erecting Co., 273 Or. 179, 539 P.2d 1059 (1975) (overruled in 1985 by a statutory amendment that voids express indemnity agreements). In 1980, the New Mexico Court of Appeals overruled its earlier decision and adopted the majority view that express indemnity contracts are enforceable against employers. City of Artesia v. Carter, supra. The logic of the legal rationale and the weight of authority contrary to the rule in Krebs on this issue is compelling.
We also consider the argument that the legislative intent is to effectuate the holding in Krebs because the Workers' Compensation Act was reenacted in 1984 and 1985 without reference to Krebs. However, we do not find that this legislative intent must, or even may, be presumed under the circumstances of this case. The general rule of construction that a legislative reenactment includes a contemporaneous and practical interpretation does not apply where there is no indication that the legislature had its attention directed to the judicial interpretation of a statute. 2B Norman J. Singer, Sutherland Statutory Construction, § 49.05 (5th ed. 1992).
*638 Nothing in the briefs or in the record in this case indicates that in either reenactment the legislature considered this Court's construction of the exclusivity provisions. A review of the legislative commentary on both reenactments shows no acknowledgement of the rule in Krebs. We recognize that this Court is bound by the ordinary rules of construction and that the "courts may not extend the construction of the [Workers' Compensation Act] beyond its legitimate scope, nor may the courts extend the Act's construction to cover persons or occupations not within the scope of the Act." Jack B. Hood, et al., Alabama Workmen's Compensation § 1-3, at 7, nn. 4 & 5 (2d ed. 1990) (citations omitted). We further recognize that the "courts are not bound by stare decisis to follow a previous interpretation [that is] later found to be erroneous." 2B Norman J. Singer, Sutherland Statutory Construction, § 49.05, at p. 16 (5th ed. 1992).
Construing the exclusivity provision in light of these rules, we hold that the Act means what it says: an employer is immune from a civil action brought by an employee or an employee's representative on account of the employee's injury that occurred in the course of employment. Krebs and its progeny, including Redwing Carriers, Inc.; Hertz Equipment Rental Corp.; Stauffer Chemical Co.; Union Camp Corp.; Aetna Casualty & Surety Co., supra, and any other cases following the rule in Krebs, are overruled to the extent that they hold that an express contract of indemnity may not be enforced by a third party against an employer. We reinstate the rule in Eley, supra, and we hold that enforcement of an express indemnity agreement against an employer by a third party does not violate the exclusive remedy provision of Alabama's Workers' Compensation Act. This holding shall apply prospectively only, but shall be applicable to all actions pending at the time of issuance of this opinion.
In making this holding we are mindful of the strong public policy interest favoring enforcement of contractual agreements entered into voluntarily by competent parties, unless they clearly contravene some positive law or rule of public morals. Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 983 (Ala.1989); Lowery v. Zorn, 243 Ala. 285, 287, 9 So.2d 872, 874 (1942). Sophisticated business entities should be permitted to enter into loss distribution arrangements as they see fit. We agree with the New Mexico Court of Appeals in City of Artesia, supra, 94 N.M. at 314, 610 P.2d at 201:
"Great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties."
We emphasize that our holding reinstating the rule in Eley and joining the great majority of American jurisdictions is limited to the enforcement of express contracts of indemnification. The consideration of this rule in the context of implied contracts of indemnification is not raised in this appeal. See, e.g., Florida Power & Light Co. v. Elmore, 189 So.2d 522 (Fla.Dist.Ct.App.1966) (an express indemnity agreement would not be construed to indemnify against the indemnitee's own negligence where the contract did not so provide); Florida Power & Light Co. v. Hercules Concrete Pile Co., 275 F.Supp. 427 (S.D.Fla.1967) (the court would not imply an agreement to indemnify where none existed); Freund v. Utah Power & Light Co., 625 F.Supp. 272 (D.Utah 1985) (refusing to imply an indemnity agreement under Utah law).
The record before us indicates that Goodyear did not bring this indemnity action in a representative capacity that would trigger immunity. In addition, it appears that Goodyear's action is not an action for damages on account of the employee's injury, but rather an action for indemnity, or reimbursement, on account of an independent contractual duty owed by Tull to Goodyear. In light of our holding that the rule in Krebs is no longer the law and that the exclusivity provision of the Workers' Compensation Act does not bar enforcement of express indemnity agreements, the trial court's dismissal of Goodyear's contractual indemnity claim is due to be reversed.

II. The Contract to Procure Insurance

Goodyear also claimed that Tull breached its agreement to procure insurance *639 to pay any amount due under the indemnity provision of the purchase order. The trial court cited Gunter v. United States Fidelity & Guaranty, supra, and held that this claim was also due to be dismissed as violating § 25-5-3, essentially because there was no distinction between a contract to indemnify and a contract to procure insurance. In Gunter, however, this Court did not address the issue whether the workers' compensation exclusivity provision bars a claim against an employer for breach of contract by failing to procure insurance.
Agreements to procure insurance are generally enforceable under Alabama law, and a party who breaches such an agreement is liable for damages resulting from the failure to obtain the promised insurance. Turner v. Deutz-Allis Credit Corp., 544 So.2d 840, 844 (Ala.1988) (recognizing that even an oral contract to provide insurance is enforceable); James E. Watts & Sons Contractors, Inc. v. Nabors, 484 So.2d 373, 375 (Ala.1985) (damages award supported by a claim alleging breach of contract to obtain insurance).
A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance. Under an agreement to indemnify, the promisor assumes liability for all injuries and damages upon the occurrence of a contingency. In contrast, an agreement to obtain insurance involves the promisor's agreement to obtain or purchase insurance coverage, regardless of whether an contingency occurs. Zettel v. Paschen Contractors, Inc., 100 Ill.App.3d 614, 56 Ill.Dec. 109, 427 N.E.2d 189 (1981). See also Mark S. Rhodes, Couch on Insurance 2d §§ 44:4, 44:19, 44:250 (Rev. ed. 1982).
Because the contract to procure insurance is distinct from the contract to indemnify, the contract to procure insurance must be considered in light of Ala.Code 1975, § 25-5-53 notwithstanding our holding that the exclusivity provisions of the Workers' Compensation Act do not bar enforcement of express contracts to indemnify. First, Tull's obligation to procure insurance is separate from and independent of any obligation to indemnify. Also, Goodyear's claim, alleging that Tull breached its contractual obligation to procure insurance, seeks to hold Tull "civilly liable" not for an injury to Tull's employee, but for Tull's failure to honor its contractual obligation to obtain insurance covering Goodyear. Because Goodyear's claim against Tull is a claim alleging breach of contract for failure to procure insurance, not for "personal injury or death of the employer's employee," as noted in § 25-5-53, the exclusive remedy provision has no application.
This Court's holding in Reliance Ins. Co. v. Gary C. Wyatt, Inc., 540 So.2d 688 (Ala. 1988), supports such a conclusion. In Reliance, this Court held that an employer's breach of contract to obtain insurance was not an "occurrence," defined as "an accident... which results in bodily injury" within the contract, that would give rise to coverage under the employer's general liability insurance. Similarly, in this case there is no "accident ... while engaged in the service or business of the employer" giving rise to application of the exclusivity provisions of Ala. Code 1975, § 25-5-53. Further, in Reliance, this Court noted that the employee's injury may go to the issue of damages sustained by the breach of contract to procure insurance, but that it is not relevant to a determination of whether the employer breached the contract. 540 So.2d at 690-91.
Accordingly, we hold that Goodyear could present facts that would entitle it to maintain an action for breach of contract to procure insurance against Tull that would not be barred by the exclusivity provision of the Workers' Compensation Act. Therefore, the dismissal of the claim alleging a breach of contract to procure insurance is reversed.
The cause is remanded for further proceedings in light of this opinion. In light of our holding with respect to Goodyear's claims concerning breach of contract to indemnify and breach of contract to procure insurance, we do not address Goodyear's arguments with respect to the constitutionality of Ala. Code 1975, § 25-5-53.
REVERSED AND REMANDED.
ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
MADDOX, STEAGALL and INGRAM, JJ., dissent.
*640 INGRAM, Justice (dissenting).
Notwithstanding the compelling arguments presented for adopting a construction of § 25-5-53 similar to that of the majority of jurisdictions, I believe that this Court should continue to enforce that line of cases holding that the exclusive remedy provision of the Alabama Workers' Compensation Act prohibits third-party indemnity actions against employers for their employees' on-the-job injuries. Since Krebs was decided in 1978, the Legislature has reenacted § 25-5-53 twice. See Workers' Compensation Act of 1992, Act No. 92-537, § 13, 1992 Ala.Acts; Workmen's Compensation Act of 1985, Act No. 85-41, § 5, 1984-85 Ala.Acts (2d ex. sess.) 44. The language of the exclusive remedy provision was virtually unchanged by either reenactment. Therefore, applying generally accepted principles of statutory construction, I believe that this Court is compelled to view such reenactments as evidence that the Legislature intended to enact this Court's interpretation of § 25-5-53.
"Where reenactment of a statute includes a contemporaneous and practical interpretation, the practical interpretation is accorded greater weight than it ordinarily receives, as it is regarded as presumptively the correct interpretation of the law. The rule has special force where the construction was made by the judiciary. Thus where the legislature adopts an expression which has received judicial interpretation, [that] interpretation is prima facie evidence of legislative intent....
"This rule is based upon the theory that the legislature is familiar with the contemporaneous interpretation of a statute.... Therefore, it impliedly adopts the interpretation upon reenactment. Legislative adoption is presumed conclusive when repeated reenactments follow a notorious practical interpretation. When Congress reenacts an earlier statute, the presumption is that it knows and approves prior judicial constructions of that act by state courts...."
2B Norman J. Singer, Sutherland Statutory Construction § 49.09 (5th ed. 1992) (emphasis added) (citing, inter alia, Alabama casesState Tenure Commission v. Madison County Board of Education, 282 Ala. 658, 213 So.2d 823 (1968); Edgehill Corp. v. Hutchens, 282 Ala. 492, 213 So.2d 225 (1968); State v. Albright & Wood, Inc., 268 Ala. 607, 109 So.2d 844 (1959); State v. McKenney, 268 Ala. 165, 105 So.2d 439 (1958); Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377 (1926); Musgrove v. United States Pipe & Foundry Co., 290 Ala. 156, 274 So.2d 640 (1972), overruled on other grounds, Tetter v. State, 358 So.2d 1046 (Ala.1978); Robinson v. City of Montgomery, 485 So.2d 695 (Ala. 1986)).
"The proper aim of judicial interpretation is to determine the intention of the legislature.... [T]here exists, and has long existed, in this state, a principle that when the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate the statute and it is presumed that the legislature deliberately adopted the statute with knowledge of this court's interpretation thereof."
Edgehill Corp. v. Hutchens, 282 Ala. 492, 495-96, 213 So.2d 225, 227-28 (1968).
In 1926, this Court stated:
"There is another rule of construction which this court has uniformly recognized for nearly three-quarters of a century, and to which it has always accorded the obligation of a mandate:
"`It is a settled rule, that, in the adoption of the Code, the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction.' Morrison v. Stevenson, 69 Ala. 448, quoted with approval in Wood, etc., Co. v. Cocciola, 153 Ala. 555, 45 So. 192.
"So, in Barnewall v. Murrell, 108 Ala. 366, 377, 18 So. 831, 836 [1895], it was declared ...:
"`It is an elementary rule of statutory construction, that re-enacted statutes must receive the known, settled construction which they had received when previously of force, for it must be presumed the Legislature intended the adoption of that construction, or they would have varied the words, adapting them to a different intent.... The rule *641 has been of frequent application to the Code; in its construction, uniformly, the Legislature has been presumed to have known the settled construction of statutes, of which there was a substantial re-enactment, and to have intended the adoption of such construction.'"
Galloway Coal Co. v. Stanford, 215 Ala. 79, 81, 109 So. 377, 379 (1926) (emphasis added). In Ex parte Musgrove, this Court held that "where the legislature re-enacts a statute ... which has been previously construed by the judiciary, the construction given in a prior decision must be accepted as part of the same." Ex parte Musgrove, 290 Ala. 156, 159, 274 So.2d 640, 643 (1972), overruled on other grounds, Tetter v. State, 358 So.2d 1046 (Ala.1978) (emphasis added).
I believe that our opinions regarding legislative adoption of prior judicial interpretations clearly require this Court to presume that the reenactment of § 25-5-53, without material change to the language construed in Krebs, represents a deliberate and knowledgeable legislative adoption of that judicial interpretation. See Singer, supra, at § 49.09. In such a situation, the party seeking to uphold the construction does not have to show that the legislature "considered" the judicial interpretation of the statute in reenacting the statute; such knowledge and consideration are "presumed conclusively."
For the foregoing reasons, I respectfully dissent.
MADDOX and STEAGALL, JJ., concur.
NOTES
[1] Cook had sued Goodyear in the Etowah Circuit Court. Goodyear had removed the action to the United States District Court for the Northern District of Alabama and had filed a third-party complaint against Tull, seeking indemnity. The federal district court dismissed the third-party complaint "without prejudice to Goodyear[`s] filing a declaratory judgment action or action for breach of contract in an Alabama state court against J.M. Tull Metals Co." Goodyear subsequently filed this state action.