THOMAS, Judge,
dissenting.
At first blush, the main opinion appears to be based on a standard interpretation of a legal contract. In actuality, the court has rewritten the contract under the guise of construing it. The result sets a dangerous precedent and represents an affront to the principles of contract law in Alabama. By rewriting the operating agreement, this court has upended a legal foundation of business development in Alabama. Businesses depend on courts to settle disputes on a whole range of issues; but nothing, not even workers’ compensation law, is so fundamental to business as contract law.
*1286 “It is well established that the constitution, bylaws, rules and regulations of a voluntary association constitute a contract between the association’s members, which is binding upon each member so long as the bylaws, etc., remain in effect. Medical Society of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321 (1944). Any dispute between a voluntary association and one of its members concerning the construction or validity of the association’s constitution, bylaws, rules and regulations constitutes a dispute as to the construction or validity of a written contract.”
Wells v. Mobile County Bd. of Realtors, Inc., 387 So.2d 140, 142 (Ala.1980).
“When interpreting a contract, this Court must first look to the plain language of the contract and determine whether that language is ambiguous. ‘[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.’ Ex 'parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala. 1998) (citing Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d 409 (Ala.1993)). ‘A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.’ Ex paite Dan Tucker Auto Sales, 718 So.2d at 35-36 (citing Estes v. Monk, 464 So.2d 103 (Ala.Civ. App.1985)).”
Turner v. West Ridge Apartments, Inc., 893 So.2d 332, 335 (Ala.2004).
In the main opinion, the court determines that the trial court’s order resulted in an involuntary dissociation of the wife from the business. The court further determines that the involuntary dissociation of the wife permitted the trial court to value the business as it did without violating the terms of the operating agreement. I respectfully disagree.
The article of the operating agreement regarding disassociation, Article XIII, addresses what to do with a member’s interest once he or she is no longer a member because of, among other reasons, death, bankruptcy, or voluntary withdrawal from the business. The trial court ascertained the value of the wife’s interest in the business and ordered that her interest be awarded to the husband upon payment of that sum. The trial court did not point to the article of the operating agreement that allowed it to make such an award. Furthermore, in the main opinion, the court fails to explain by what right a trial court can dissociate a member of an LLC. The actions of the trial court and this court are not supported by any provision in the operating agreement.
In fact, in the main opinion, this court ignores a provision in the operating agreement. In order to dissociate the wife from the business, the trial court first disposed of the wife’s interest in the business through a conveyance to the husband. Section 2 of Article XII, the article of the operating agreement containing provisions regarding the disposition of a member’s interest in the business, clearly states that “any attempted Disposition of a Membership Interest, or any part thereof, not in compliance with this Article is null and void ab initio.” Rather than correctly interpreting this provision as contemplating every circumstance by which an interest in the business might be disposed, the court, in the main opinion, implies that the burden is on the parties, during the formation of an LLC, to explicitly provide for every scenario in which an interest in an LLC may be disposed. Such a requirement is unduly burdensome and would have negative effects on the business climate of our state. Businesses have long depended on *1287 the certainty that contracts will be interpreted by their plain meaning and not arbitrarily rewritten by the judicial system. Union Cent. Relief Ass’n v. Johnson, 198 Ala. 488, 491, 73 So. 816, 817 (1916). Contracts should not be ignored merely because they are interpreted in conjunction with divorce trials. The trial court was bound to enforce the operating agreement.
The wife did not merely object to the qualifications of the accountant at trial. The wife also sought proper interpretation and enforcement of the operating agreement. The wife insisted that a panel of certified appraisers, with one selected by each party, produce a valuation as provided for in the operating agreement. Instead of enforcing the operating agreement, the trial court relied solely on the husband’s accountant to value the business. In order to justify the trial court’s action, this court, in the main opinion, uses a contractual interpretation that was not discussed by anyone at trial.[10] Both parties argued about whether the wife, by filing for divorce, had dissociated herself from the business. The husband did not argue that, because the wife did not desire to sell her share in the business, the operating agreement did not apply. In fact, when questioned by her attorney, the wife testified:
“Q. Would you agree that you told me [in your deposition] in January of 2009, just a few months ago, with respect to this business that you wanted [the husband] to buy your interest in the business?
“A. I did.”
In the main opinion, the court conflates the wife’s arguments at trial. Although it is true that the wife wanted to maintain her interest in the business, the wife clearly argued that, in the alternative, the court must abide by the provisions of the operating agreement in fashioning any disposition of that interest. Furthermore, although the wife suggested to the trial court that the parties’ contract dispute regarding her dissociation from the business should be addressed in a separate action, she did not waive her argument that the trial court must follow the operating agreement which, she asserted, was binding on the court, because her counsel declined to continue to assert an argument about the applicability of a separate action. The argument that the trial court’s action was contrary to the operating agreement is central to the wife’s appeal.[11] Lastly, I respectfully disagree with the court that the “valid ground” on which it relies— namely, that “the terms of § 2.2 of the operating agreement do not govern valuation when a member becomes involuntarily dissociated from the business due to a divorce judgment,” 58 So.3d at 1282 — is a valid ground on which it may affirm the trial court’s judgment; instead, I conclude that the operating agreement does govern *1288 the valuation of the wife’s interest in the business.
Article XII of the operating agreement contains both a ban on any disposition of a member’s interest in the business that is not in accordance with the article and a mechanism for disposition of a member’s interest if the members cannot agree on a valuation of the member’s interest. First, Article XII, § 1.5, is triggered because the wife did desire to sell her interest in the business. The parties were in court, in part, because they could not agree on a purchase price for the wife’s interest in the business. The wife made clear during the trial that, in addition to the divorce, she sought enforcement of the operating agreement. In the main opinion, the court asserts that Article XII, § 1.5, is not triggered because “the wife did not, in fact, ‘desire to gift, sell, or otherwise convey her interest in the business to the husband.” 58 So.3d at 1281 n. 3. The court then asserts that “the trial court plainly stated that it was ordering the wife to divest herself of her interest in the business against her stated desire to continue running the business with the husband.” 58 So.3d at 1281 n. 3. However, the wife stated that, if she could not retain her interest in the business, she desired to sell it to the husband in a manner consistent with the operating agreement. Therefore, Article XII, § 1.5, applies.
Second, since the members of the business could not agree on a purchase price for the wife’s interest in the business, Article XII, § 1.5, further states that “the purchase price shall be determined using the same procedure as is used to determine the purchase price in the event of the death of a Member.” As correctly stated in the main opinion, the above quotation refers to Article XIII, § 2.2. Despite its acknowledgment that Article XII, § 1.5, triggers Article XIII, § 2.2, the court, in the main opinion, accuses this judge of attempting to rewrite the operating agreement because, the court asserts, the wife did not meet one of the triggering requirements listed in Article XIII, § 2.2. The fact that the wife is not dead, is not incompetent, and did not voluntarily dissociate herself from the business is not fatal to the wife’s position that the operating agreement controls. Rather, because the wife desired to sell her interest in the business to the husband, the trigger for the applicability of Article XIII, § 2.2, is clearly found in Article XII, § 1.5.
Third, as accurately described in the main opinion, Article XIII, § 2.2, provides that a panel of appraisers is to value the business. Lastly, neither the trial court nor this court, in the main opinion, can point to any section of Article XII that authorizes the action of the trial court. Because Article XII bans any disposition of a member’s interest in the business not contained within the article, the trial court’s disposition was not in compliance with the operating agreement and the court’s reasoning in the main opinion is not a valid ground on which it can affirm the judgment of the trial court.
The parties shared equally in the ownership and management of the business. The husband oversaw day-to-day operations of the business, including the marketing and selling of the floor coverings, while the wife maintained the accounting records. This arrangement was governed by a valid operating agreement created at the formation of the business. The business began operations in 2000 when the wife convinced the husband that he was being treated unfairly by his previous employer and could, with her assistance as office manager and bookkeeper, start a 50/50 business venture with her. Consequently, they formed the business as an LLC incorporated in Alabama that was governed by *1289 a valid operating agreement. Now, the founder of the business has been denied her interest in any future income generated by that business by a court that completely and openly ignored the operating agreement that governed the business.
The main opinion is a significant obstacle to the improvement of the business climate in our state. It advances arbitrary judicial interference into the governance of businesses. “ ‘Great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties.’ ” Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633, 638 (Ala.1993) (quoting City of Artesia v. Carter, 94 N.M. 311, 314, 610 P.2d 198, 201 (N.M.Ct.App.1980)).
By providing a framework for a member’s dissociation from the business and the disposition of that member’s interest, the operating agreement reflects an obvious desire to prevent courts from interfering in the governance of the business. It is notable that, rather than permitting a court to value the business, the operating agreement provided for valuation by certified appraisers. Yet, in this case, the court is allowed to take the business from one party and redistribute it to the other according to a valuation assigned by the court. Although the amount at stake and the size of this business is small in this particular case, the main opinion is a significant setback to businesses and entrepreneurs desiring to control their own affairs.
The wife further argues that the trial court erred by not awarding periodic alimony or by not reserving that issue for future determination and that it exceeded its discretion in dividing the marital property. Because I do not agree with the conclusion in the main opinion that the trial court properly valued the business, I would not consider these issues at this time. Issues of alimony and property division are usually closely related. Ex parte Drummond, 785 So.2d 358, 361 (Ala.2000). Thus, I would instruct the trial court to reconsider its entire judgment after the business is valued in a manner consistent with the operating agreement.
Because I conclude that the trial court should have followed the provisions of the operating agreement when valuing the wife’s interest in the business, I respectfully dissent.

. My emphasis on the reliance in the main opinion on an argument not mentioned by any party at trial is not meant to suggest that our court cannot affirm a judgment on any valid ground. Rather, it is meant to suggest that the fact that the court’s interpretation in the main opinion is not supported by either party’s construction of the operating agreement might be an indication that it is an improper construction that is not in accordance with the intent of the parties.

. I note that the main reason for the confusion as to what the wife argued on appeal is a result of the reliance by the court, in the main opinion, on an interpretation of the operating agreement that the wife could not have reasonably been expected to defend on appeal. Both parties’ briefs to our court focus on whether under Ala.Code 1975, § 10 — 12— 36(b)(1)(d) & (e), the operating agreement applies in this case. The interpretation of the operating agreement was never an issue at trial.